Good morning, Your Honors, and may it please the Court. My name is Randall Levine for Appellant TDY. I'd like to reserve three minutes of time for rebuttal. You bet. Just keep track of your own time, please. It'll count down. Thank you, Your Honor. In two prior cases in this Court, Schell and Cadillac, the government was allocated 100% of the cleanup costs, and its contractors, who actually operated the sites, were allocated 0%. And that was because the cleanup was properly seen as part of a national war effort that society as a whole should bear. The contractors complied with all industry standards and filled government contracts to specifications. And the government was aware of the processes that led to... The government was aware of the processes that led to the contamination. That was the third in the list of things that I was talking about before. And the District Court's opposite allocation in this case can't be reconciled with Schell and Cadillac, because those same facts that drove the decisions in Schell and Cadillac are also present here. But, Counsel, the facts are quite distinguishable, aren't they? Well, there may be some distinctions. Every case is slightly different, but on the core facts that led to the 100% allocation to the government in Schell and Cadillac, those same core facts are present here. And that is, again, this was wartime production for essential military equipment. The contractor was found to have complied with all industry standards and to be filling out the government's contracts as specified. The government specifically required the particular chemicals to be used in the operations that now have to be cleaned up. And the government was aware of the operations that led to the contamination. Now, on those facts, all of which were present in Schell and all of which were present in Cadillac and are present here, only a similar allocation would be appropriate. The District Court got it wrong and led to an upside-down allocation, because the court made two fundamental errors. And the first of which is that the court applied an improper presumption against allocating costs to the government out of concern for burdening the taxpayers with the cost of the cleanup. And as a result of that presumption, the court thumbed the scale in favor of the government and against TDY throughout the opinion. But that presumption is improper because CERCLA specifically requires that when the government is a responsible party, it should be treated... Sorry, what's the second error just before you get too far into that? Oh, the second error is that the District Court held that even though the government was liable as an owner of facilities at the site, the government shouldn't be allocated any of the cleanup costs because the government didn't operate any of the facilities that it owned. That can't be squared with CERCLA's underlying policy that both owners and operators can be responsible parties and liable for response costs. That's all the Schell and Cadillac cases tell us, is that even though both parties have liability under 107, under 113, you can still have the 100 to 0 allocation. So I don't think that's very helpful. Actually, I don't find either of the two errors you just identified, supposed errors, as very helpful at all to your case. So let me just put it in these terms. I guess I understand where you're coming from. The 100 to 0 does seem unfair in this situation. But I guess what I struggled with is coming up with some kind of a legal principle that we could announce here that would do anything other than just, I guess, say to the District Court, 100 to 0 can't be the number, go back and try again. And that doesn't seem very satisfying either, given the broad discretion the District Court has. So what is the legal principle that you would have us articulate to explain to the District Court, I guess, what needs to be done differently if we were to send it back? Well, that's a good question. The legal principle and what's underlying this appeal is that Shell and Cadillac provide benchmarks. District Courts do have wide discretion, but it's not limitless. And this Court teaches in Cadillac and in Shell that under these kinds of circumstances, a 100 percent allocation to the government is fair and equitable. But, counsel, you just said it yourself. You said under these circumstances. And the circumstances in those cases were quite different, I should say. And by the way, PCBs weren't required, at least according to the briefing by the government specifications. I think the other two were. But the government was dramatically more involved in those cases, right? And for the last 20 years in this particular case, a 60-year time span, the last 20 years the government wasn't on the scene, right? There's a couple of important points in there that maybe I can break them up. Why don't you answer those questions first? For the last 20 years, the government didn't own equipment? For the last 20 years, the government didn't own equipment. But also for the last 20 years, there were... Am I right that PCBs weren't required? You're correct that PCBs weren't required. PCBs were present, however, in the facilities, the equipment that the government owned and supplied for use at the site. Okay. I think it's different than what you said earlier. So if we're talking about the circumstances, and that really is your thesis in response to Judge Watford's questions, that these two cases provide a benchmark because the circumstances are so similar, and my concern is I don't think they're similar. So I'll get out of your way now and let you address the question. The facts are similar for the big picture reasons that I've listed before, which is that this is wartime production and that the government was involved. The government was providing detailed specifications requiring exactly how this critical military equipment needed to be made. And they had observers on site and auditors who were able to observe, and this is undisputed, that they observed all of the practices going on at the facility while they were constructing the planes for the use of the military effort, and also that the government could have controlled and did approve all of the manufacturing processes that went on at the site. The core facts in Shell EV... But they didn't do things like in Shell. They didn't say, no, we're not going to give you the railway cars to let you responsibly dispose of the waste, for example. So I think there are significant differences. If there are, and Judge Watford is right, I don't think you're contesting the abuse of discretion standard, right? Well, we're not contesting that that's the standard. And while there are differences, right, for example, the one that you just mentioned, right, the main difference there is that in Cadillac and in Shell, everybody was aware that the nobody, neither the government nor TDY at the time they were released, was aware that the products were hazardous. But that's not a distinction that matters. The blue brief makes that point, but in the 70s, actually, one by one, these were coming online as hazardous substances. And as that occurred, the practices at the facility changed. Okay, so getting back to Judge Watford's question, which is, this may seem unfair, and it's certainly, it's notable and perhaps very surprising. My sense, frankly, is that the government was surprised by the result. It's not really what they argued for. Nevertheless, here it is. And what's your strongest argument that the trial court abused its discretion, please? Well, like cases have to be treated alike. So even crediting that there are some differences between these cases in Cadillac and Shell, they would only allow for mitigation or minor adjustments to the allocation that the court already found was proper in Shell and in Cadillac Fairview. That's 100% to the government. So if there are particular facts that distinguish this case from Cadillac and Shell, then each one of those facts would have to be considered and would have to be evaluated to determine whether there should be some kind of downward adjustment of the government's allocation. But that's not what the court did here. Instead, the court went all the way to the other side of the scale. And the court presumed, because there was some underlying policy of not burdening the taxpayers, that the government should pay zero. I guess it's unfortunate that you've repeated that refrain, because I just think that's flatly wrong. Obviously, the rationale for the district court's ruling was that it thought the most significant factor to be thrown into this mix of, you know, 100 different considerations was that the actual direct cause of the contamination occurred basically on the watch of your client. That the realm of activities within the plant's operations, you know, that actually led most directly to the contamination, were solely within your client's responsibility and not the government. So that, to me, is the linchpin of the district court's analysis. I could see how the court might have come out differently, but I'm having a hard time coming up with a legal principle that would allow us to tell the district court, no, 100 to zero is absolutely forbidden in this situation. Well, that's error, first because it's completely inconsistent with Shell and Cadillac, which speak to this directly. The government argued in that case as well, that the operators in that case had direct responsibility for actually performing the disposals in that case. But that's not unusual. Operators are assumed that that's what operators do, is they're the ones who are actually on-site performing the operations. But just because that's the case doesn't absolve owners of responsibility under CERCLA. Otherwise, CERCLA wouldn't include owners as a responsible party. Only operators would be liable. And the court further erred by assuming that just because an operator is actually the one who's on-site, actually fulfilling the contract and performing the operations, that that amounts to fault and characterized the conduct in this case as comparative fault, when it's not. And in fact, the district court's findings, in fact, preclude any finding of fault by TDY in this case. And there's no finding of fault possible because TDY complied with all industry standards, as they changed over time. It's not talking about fault in a negligent sense. It was just talking about, you know, under whose responsibility did the activities that caused the contamination occur? It looked at the full range of the government's conduct, the full range of your client's conduct, and said, as between the two of you, the things that actually caused the contamination were within your client's bailiwick, not the government's. That's all the court was saying. And again, I just... I mean, if you've got an answer, I'd love to hear it. As a legal matter, that doesn't strike me as forbidden. And so why wouldn't we say, you know, we might have come out differently ourselves on this, but the district court didn't abuse its discretion? Because as a legal matter, that's an arbitrary distinction. If there's no fault on either side... What's an arbitrary distinction? To say that one party was responsible for actually performing operations, whereas the owner that contracted for those operations to be performed didn't actually do them, right? That's an arbitrary distinction. The government caused... Wait, wait, wait. Yeah? Doesn't that speak directly to the Gore factors? She looked at who was really involved in the operations. Yes? Yes. She looked at that. What's arbitrary about that? I think I'm missing your point here. What the district court didn't do was consider that the government put these contracts out and the government caused this contamination to the same extent because the government would have been contracting for and constructing these military equipment no matter what. Either TDY was going to do it or some other contractor was going to do it or the government would do it itself. It needed this for the war effort. And because of the industry standard practices at the time were followed, that means that whoever performed these operations, the same kind of releases would have occurred because the same processes would have been used. No, that's just not... She didn't make findings along those lines at all, counsel. That the government caused this to the same extent as your client? The court didn't say that, but that was error. Because unless one party... It's just not. What she was doing there is making a finding after, was it a 12-day trial? That your client was infinitely more involved in the operations. That's what Judge Watford's getting at. Infinitely more involved in the operations. And I'll grant you that I think two of these substances were required by the specifications. One was not. But nevertheless, during the 70s, this was... Again, it's a strict liability statute, so it's not a question of fault. But there was certainly an awareness in the 70s that as these came on sequentially as I'll just say hazardous substances under various pieces of legislation that it was your client who was involved in how the stuff got dripped or leaked or contained or disposed of. Right? Well, right. And of course. So when you say the government was just as responsible, you're using a but-for causation, I think, kind of harkening back to a tort theory that because they left the contract they're responsible? Is that your argument? Well, yes. I mean, to the same extent that the government put the contract out and TDY fulfilled the contract. Why are you arguing they're just as responsible? Is your case really decided on whether it's a 50-50 responsibility? As I understand it, owners and operators are responsible. The prior judge found and there was no change that the government is an owner. Now, I don't quite understand why you're going for a 50-50 or whatever. As I understand, your argument is it can't be 100%. Well... Are you arguing that this is an erroneous interpretation of the law or that the findings made were clearly erroneous? Which basis are you making your argument? I'm not arguing that the findings were clearly erroneous. I am arguing that the conclusions... You're not arguing that the findings were clearly erroneous? No. I'm arguing that the conclusions that the court drew from them were arbitrary. The legal conclusion? Yes, Your Honor. And you aren't arguing at all on the factual issues, the findings? No. No. Interesting. No. The District Court's findings, in fact, were not challenging. Because the District Court found that TDY complied with all of the industry standards, that it was not negligent, that there were no willful discharges, and that the government observed and was aware of all of the processes that led to the contamination, the District Court found that this production was necessary for the war effort, that it yielded substantial benefit to the government in its warfighting capacity, not just in World War II, although certainly then, but in every major engagement since. And the District Court also found, quite clearly, that the contamination at issue for which TDY is seeking reimbursement is contamination that occurred starting in 1939 and either ending completely or tailing off in the early 70s with the passage of the Clean Water Act. Well, the District Court finds that there was contamination going on, but the District Court found that the government's hands were not on it. That is, they may have asked to have these fluids used, but they were not the ones that dripped the fluids on the floor. So, if you're trying to get ownership responsibility, as I understand, how do you argue that the District Court was wrong in the analysis that the only person that's really responsible is the one who actually sloppily did away with these contaminants? Well, first, the District Court didn't find that there was sloppy disposal. What the District Court found was that in the ordinary course of manufacturing operations, sometimes there would be drips on the floor or... You said the government did that, your client did it. Well, right, but just as in Cadillac and just as in Shell, of course the contractor actually performed those operations. That's the contractor's job. If the government was going to do it itself, it wouldn't contract with the contractor to do it. But because of this kind of release that's just ordinary in the course of regular manufacturing operations necessarily is going to occur, then the government was aware of that. The government observed it as it was occurring and so that is a common factor and it was one of the key factors in Shell and in Cadillac that warranted allocating a substantial. Do they... Well, that has to go with what percentage of fault. But if an owner, if a person is an owner, what difference does it make who's the one who actually carried the contaminants to the wrong position? Well, if I understand you correctly, I think it shouldn't matter at all  was directly responsible to use the court's words for the releases and that's actually what the court specifically held in Cadillac and Shell as well which is that the contractor is directly responsible for performing the work. I can't follow the government's argument. There's been no challenge that the government was an owner. It was found before the  judge had it and it wasn't touched and so I just don't understand how we have to parse through the rest of this. If the owner is liable I don't see anything in ownership that has to do with you. You're the person that disposed of the contaminants. That's right your honor. Once you're liable as a responsible party it's generally presumed that you'll be allocated some amount of the cleanup costs but here it's not just some. Here there were specific factors that the court had previously found warranted allocating 100% of the cost to the government. What do you think the percentage should be in this case? The right answer is the answer from Schell and Cadillac. It should be at least a similar allocation to that. If there are adjustments. 100% the other way? That was 100% the other way. Well right and the court  You want us to write an opinion that says on these facts the only legally permissible outcome is 100% the other way? No. So what's the number you want us to say or you don't want us to say? Well below we argued for 90% because that is what the party's contracting history indicated they had previously determined was reasonable because the government had reimbursed up to 90% of response costs up to that point. If we were to write an opinion in your client's favor what is it that you wanted to say exactly? The court should vacate the opinion below and should direct the court to reallocate according to the guidance set out in the guidance. So you can't just give the district court another chance that's all I'm asking. So the court should vacate and remand for allocation according to specific guidance but not a specific number. You're just about out of time. You want to say something? I'll give you another minute when you come back. All right. Thank you. May it please the court. Good morning your honors. My name is Rachel Heron on behalf of the United States. I'd like to start in if I may with a series of questions that Judge Wallace was asking towards the end of opposing counsel's presentation with regard to why we're even interested in what the allocation here is given that the government was an owner. And the government of course does not contest that it was found liable as an owner under section 107 of CERCLA in this case. However it is well known that under section 107 and we have the district court decide as a matter of equity who should actually bear shares it is permissible and in fact has happened in numerous cases including in Cadillac and Shell. Your argument is the allocation is a really issue. The government is on the hook because it is an owner and that is a fact in the case and the only question is does the government have any responsibility for what happened so that the court was wrong in giving 100% to Ryan Aeronautical and its progenitors. The thing that sort of concerns me is the district court saying that our cases of Shell and Cadillac are outriders although we are the district court and they were compelled to file another case which was a district court case. Can you name one case in any of these cases that we have had now by the ton. Can you name any one case where the government has ever got off with 0% ? We are not aware of another case where the government ever ever came in with 0%. Now this is that case. Now why is it that we were wrong in Cadillac that it isn't conceivable and we would be concerned if it came in with 0%. There must be something wrong. I don't think that the court was wrong in Cadillac but I don't think that that's what the court actually held in Cadillac. What the court was doing in Cadillac was deciding whether the district court had abused discretion in a very fact specific context and what Cadillac found was that on this morning the facts of this case are frankly not comparable to the facts in Cadillac. My read of the record is the government was surprised by this result because there are two of the three substances that were required by contract. What about his argument that when the government lets this kind of contract and requires hazardous substances the government should be on the side of the case. In this case the district court found at several points in its opinion expressly that the releases that occurred weren't inherent in the fact that the government had asked TDY and that the government didn't have any say in. So it's not the case that the government's specifications and that the government's needing these products were what caused the contamination to occur in the district court. The district court     years up to 1999 the United States did allow TDY to be on the side of the case and that  government did not allow TDY to charge some of its cleanup costs as indirect costs on its contract. But the reason that the government did that was not because there was any kind of indemnification or hold harmless agreement that the government offered TDY as was the case in Cadillac. In Cadillac this court found that under the general federal accounting regulation contractors to the extent their expenses are allowable are able to charge them as indirect costs. Isn't that a pretty good indication that as a matter of fairness even the government can't recognize that it should put some of the bill? I think this cuts against you. Why doesn't that hurt the government's position here? I don't think it does because it was well in the first place I think that the fact that the government did contribute for so many years actually shows why the district court's allocation isn't unfair. For many years the government was already footing a large part of this bill here. There is no representation or understanding between the parties that the government would continue to do that at a time when the contractor in the district court was paying up to 90% of the cleanup costs at this site. We understand that the cleanup costs that TDY is seeking to recover are costs that were incurred after 1999. After 1999 when it wasn't fulfilling any more. It's cleanup costs for environmental contamination related to the exact same conduct that's at issue here. I apologize. Yes, that's correct. It is correct. That to me is the most relevant fact, correct this misunderstanding if I'm wrong. The government recognized in these prior dealings that we didn't contractually agree to indemnfy you, so we're not on the hook for this necessarily but as a matter of fact, we recognize we had a hand in that.      not on the hook for this necessarily but as a matter of fact, we recognize we had a hand in that. The government recognized we had a  in that     we   had a hand in that but as a matter of fact, we recognize we had a hand in that but as a matter of                               point of fact, we had a     a matter point of fact, we recognized we had a hand I            we had a hand in that but as a matter of point of fact, I have a hand in that but as            of point of fact, I have a hand in that but as a matter of point of fact,
judges: Wallace, Christen, Watford